IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

**F I L E D**

SEP 1 9 2024

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

ORLANDO L. JOHNSON,

        Plaintiff,

v.

CALIFORNIA STATE COMPENSATION
INSURANCE FUND, a state government
agency; KIRAN KICHIBATA, in his
official capacity and as an Individual;
MICHAEL ELERTS, in his official capacity
and as an Individual; and PRIYA
KOSOLARIAMAN, in her official capacity
and as an Individual,

        Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

CASE NO.:

**C24-06587**

COMPLAINT FOR DAMAGES,
ATTORNEY FEES AND
JURY DEMAND

---

## COMPLAINT AND DEMAND FOR JURY TRIAL

NOW COMES, Plaintiff ORLANDO L. JOHNSON  (hereinafter "Mr. Johnson" or

"Plaintiff") *In Pro-Se,* and submits his complaint against CALIFORNIA STATE

COMPENSATION INSURANCE FUND, (hereinafter the "Fund"), KIRAN KICHIBATA, in

his official capacity and as an Individual; MICHAEL ELERTS, in his official capacity and as an

Individual; and PRIYA KOSOLARIAMAN, in her official capacity and as an Individual

(hereinafter collectively "Defendants") for unlawful employment practices on the basis of race

(African American/Black) and national origin (American) in violation of the Civil Rights Act of

1991; 42 U.S.C §1981; and 42 U.S.C. § 1983 for  equitable relief and  monetary damages to

redress Defendants' unlawful employment practices against Plaintiff, including discriminatory

1

treatment in the workplace, disparate treatment, a hostile and harassing work environment based on his race, national origin, and retaliation for engaging in protected activity.

## JURISDICTION & VENUE

1.     This Court has jurisdiction under 28 U.S.C. § 1331, 1332, and 1343, This action is authorized pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. §1981; and 42 U.S.C. § 1983.

2.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331 as the claims in this case involve discrimination protected under the Constitution, laws, and/or treaties of the United States as this complaint asserts claims that arise under the laws of the United States, specifically deprivation of rights under the Civil Rights Act of 1991, et seq., 42 U.S.C. § 1981 and 42 U.S.C. § 1983, et seq. for discrimination based on race, national origin, disparate treatment, a hostile work environment, and retaliation.

3.     This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(A)(1) as the amount of controversy exceeds the sum or value of $75,000.

4.     This Court has original jurisdiction pursuant to 28 U.S.C. § 1343, without any requirement of amount in controversy, over any civil action authorized by law to redress the deprivation of rights, under the color of any state law, statute, ordinance, regulation, or custom secured by the Constitution.

5.     Venue is proper in this judicial district as the employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Northern District of California

6.     Plaintiff has met all conditions precedent prior to filing this lawsuit.

2

7.      On or about May 7, 2021, Plaintiff filed a complaint with the California Department of Fair Employment and Housing ("DFEH") dually filed with the United States Equal Employment Opportunity Commission ("EEOC"). **Exhibit "A".**

8.      On or about May 7, 2021, Plaintiff received a right-to-sue notice from DFEH. **Exhibit "A"** giving the Plaintiff the Right to Sue and stating the EEOC would be responsible for the processing of his complaint.

9.      On or about June 15, 2021, Plaintiff's perfected Charge of Discrimination was filed with the EEOC.

10.     On or about April 26, 2022 Plaintiff filed a Charge of Discrimination United States Department of Justice, Civil Rights Division (hereinafter "DOJCRD").

11.     On or about October 24, 2023, the DOJCRD issued Plaintiff a Notice of Right to Sue. **Exhibit "B".**

## PARTIES

12.     At all times relevant to this claim, Plaintiff was a resident of Alameda County, state of California, Pleasanton, California.

13.     At all times relevant, Plaintiff was employee of Defendant, California State Compensation Insurance Fund (hereinafter the "SCIF" or the "Fund"), located in the State of California.

14.     At all times relevant, Defendant Fund is an instrumentality a government agency for the state of California established by the State legislature, and incorporated under California state law. Defendant fund has the capacity under California law to sue and be sued. Defendant Fund is subject to liability under 42 U.S.C. § 1981 because of racial and national origin discrimination in employment. Defendant Fund is also subject to liability for violation of federal civil rights and

3

race and national origin discrimination perpetrated under the color of California state law under 42 U.S.C. § 1983.

15.     Upon information and belief, Defendant Fund maintains its principal place of business at 5880 Owens Drive, Pleasanton, California 94588.

16.     At all times relevant to Plaintiff's employment with Defendant Fund, Defendant Kiran Kichibata, ("Mr. Kichibata") was a Senior Engineer contractor contracted by Defendant Fund and was tasked with the onboarding and training of Plaintiff as directed by Director Michael Elerts ("Mr. Elerts").

17.     At all times relevant to Mr. Kichibata acts or commission alleged in this Complaint, Mr. Kichibata acted under the color of California and federal law. He is subject to liability under 42 U.S.C. §§ 1981 and 1983. Mr. Kichibata is sued in his individual capacity.

18.     At all times relevant to Plaintiff's employment with Defendant Fund, Defendant Mr. Elerts was a director of Defendant Fund, and Plaintiff's hiring manager.

19.     At all times relevant to Mr. Elerts' acts or commission alleged in this Complaint, Mr. Elerts acted under the color of California and federal law. He is subject to liability under 42 U.S.C. §§ 1981 and 1983. Elerts is sued in his individual capacity.

20.     At all times relevant to Plaintiff's employment with Defendant Fund, Defendant Priya Kosolariaman ("Ms. Kosolariaman") was a Telecommunications Manager with Defendant Fund and Plaintiff's first-line supervisor.

21.     At all times relevant to Ms. Kosolariaman acts or commission alleged in this Complaint, Ms. Kosolariaman acted under the color of California and federal law. She is subject to liability under 42 U.S.C. §§ 1981 and 1983. Ms. Kosolariaman is sued in her individual capacity.

4

## STATEMENT OF CLAIMS

22.    Plaintiff is an African-American/Black male.

23.    On or about December 9, 2019, Plaintiff was hired by Defendant Fund as a Informationn Technology Specialist II (Telecommunications Engineer).

24.    Plaintiff was the only African-American/Black male in the Defendant Fund's Pleasanton, California office 5880 Owens Drive, Pleasanton, California 94588.

25.    At all times relevant, Plaintiff's hiring manager was Director Michael Elerts (Caucasian/White male)(hereinafter "Mr. Elerts").

26.    At all times relevant, Plaintiff's first-line supervisor was Ms. Kosolariaman (Asian, Indian) Telecommunications Manager.

27.    Immediately upon hire, Plaintiff was assigned to shadow and train with a non-management, Mr. Kichibata, Senior Engineer (Indian male).

28.    Upon information and belief, Mr. Kichibata was responsible for teaching Plaintiff how to perform the essential functions of his job, including but not limited to providing him with administrative support critical to navigating the Fund's infrastructure.

29.    Instead of onboarding Plaintiff, Mr. Kichibata ignored and ostracized Plaintiff by ignoring him and providing him with no meaningful training in order to be fully successful in the performance of the duties and responsibilities of his job.

30.    As a direct and proximate result of Mr. Kichibata's disparate treatment of Plaintiff, Plaintiff created his own "on-boarding process" by contacting them one-on-one by telephone and planned to shadow them live in their offices.

5

31.     After the COVID-19 pandemic occurred and employees were directed to work remotely, Plaintiff set up video training but Ms. Kosolariaman removed all the training from Plaintiff's calendar.

32.     Further, Ms. Kosolariaman started over-scrutinize Plaintiff's work and began to monitor the amount of time Analyst were assisting Plaintiff.

33.     Ms. Kosolariaman often conducted conference calls with Senior Engineers Scott Smith and Kiran Kichibata, excluding Plaintiff, leaving Plaintiff to piece together bits and pieces of notes to understand the status of projects or upper management feedback and directives. No consistent notes or verbal summaries were ever provided to Plaintiff despite Plaintiff's repeated requests.

34.     In March 2020, Mr. Elerts designated Mr. Johnson and Mr. Kichibata to work on a project. On March 20, 2020, Mr. Kichibata called a meeting with five (5) other analysts to the team to discuss the work he assigned to Plaintiff. Mr. Kichibata did not invite Plaintiff to the meeting despite the meeting was about the work Plaintiff was to perform on the project.

35.     On or about March 21, 2020, Plaintiff complained to Mr. Elerts about the disparate treatment and Mr. Elerts took no action.

36.     On or about April 24, 2020, Plaintiff received a "successful" performance evaluation from Mr. Elerts despite not being properly trained by Mr. Kichibata, and despite Mr. Kichibata and Ms. Kosolariaman excluding Plaintiff from critical meetings relevant to Plaintiff's ability to perform the essential duties and responsibilities of his job.

37.     In August 2020, Mr. Kichibata assigned Plaintiff to work on a server and instructed Plaintiff to join a conference call on Zoom. On the conference call which included Plaintiff, Mr.

6

Kichibata, and Ms. Kosolariaman, Mr. Kichibata and Ms. Kosolariaman began to speak to each other in another language.

38.    On several other occasions throughout Plaintiff's employment, Ms. Kosolariaman and Mr. Kichibata routinely talked during meetings with Plaintiff to one another in another language.

39.    Throughout Plaintiff's employment with Defendant, similar incidents occurred including but not limited to Ms. Kosolariaman continuously refusing to respond directly to Plaintiff's emails about work matters that directly affect is ability to competently perform the essential duties and responsibilities of his job.

40.    On or about September 10, 2020, during a telephone performance review with Ms. Kosolariaman and Mr. |Elerts, the two managers issued Plaintiff a verbally negative review stating he was not being a good coworker toward Mr. Kiran and that he was performing late on projects and submitting subpar work on projects. During the review, Plaintiff complained to Ms. Kosolariaman and Mr. Elerts his frustration with the lack of management and peer support as a new employee. Plaintiff outlined for the managers Mr. Kiran's refusal to provide any meaningful onboarding, including failing to provide Plaintiff with complete telecom login credentials that prevented him for effectively performing the overall duties and responsibilities of his job.

41.    Despite the negative verbal performance evaluation and after hearing Plaintiff's complaints, on or about September 15, 2020, Plaintiff received a "successful" performance evaluation from Mr. Elerts despite not being properly training by Mr. Kichibata and despite Mr. Kichibata excluding Plaintiff from critical meetings relevant to his ability to perform the essential duties and responsibilities of his job.

42.    Prior to Ms. Kosolariaman's hire, Plaintiff would routinely assist on open assigned tickets of all teammates and take escalations from analysts where applicable. After Ms. Kosolariaman's

7

hire, Plaintiff was treated disparately compared to non-American, non-black telecommunication engineers. Specifically, Ms. Kosolariaman subjected Plaintiff do different Analysts/Engineers trouble ticket escalation procedures for only Plaintiff, instructing Analysts (Marites Tating (Pilipino); Heyd Jao (Japanese); Michael Thome (Caucasian); Donna Grifis (Caucasian); and Kevinn McDowell (Caucasian)) to assign Plaintiff one level tickets into Plaintiff's queue. The other two senior engineers Scott Smith (Caucasian)("Mr. Smith") and Mr. Kichibata (Indian) were not subjected to the same trouble ticket escalation procedures as Plaintiff.

43.     After Plaintiff's complaint, Ms. Kosolariaman retaliated against Plaintiff by changing procedures again and the changed procedures applied to Plaintiff only. Specifically, Ms. Kosolariaman told the other two engineers, Mr. Smith and Mr.  Kichibata, to send Tier 3 project-related tickets to Plaintiff.  This procedure applied to Plaintiff only.

44.     Through Plaintiff's employment no one clearly communicated to Plaintiff what  his roles and responsibilities were on various projects.

45.     Throughout Plaintiff's employment he was written up and/or reprimanded for projects not completed on schedule, however, to Plaintiff's knowledge only a few projects were ever completed on schedule and no other telecommunications engineers, senior engineers, or analysts were ever written up or reprimanded for failing to meet deadlines.

46.     Throughout Plaintiff's employment, Ms. Kosolariaman referenced Plaintiff in the third person when speaking about Plaintiff to his peers in email communications.

47.     Throughout Plaintiff's employment, neither Mr. Elerts nor Ms. Kosolariaman ever responded directly to Plaintiff's emails, and often Senior Engineer Scott Smith would respond on behalf of Ms. Kosolariaman without full context of the issue on the email thread.

48.    On numerous occasions Ms. Kosolariaman CC'd upper management on emails, misrepresenting issues and casting Plaintiff in a negative light.

49.    Throughout Plaintiff's employment, Plaintiff was excluded or removed from Team combo meetings, removed from the calendar, and/or denied attendance at meetings that were critical to Plaintiff's effective performance of his job duties and responsibilities.

50.    Throughout his employment, Plaintiff was removed or uninvited from third-party vendors meetings that were critical to Plaintiff's effective performance of his job duties and responsibilities.

51.    On or about December 3, 2020, Defendant Fund sent Plaintiff a termination letter effective December 15, 2020 that substantially mischaracterized Plaintiff's interactions with Mr. Kichibata, Ms. Kosolariaman, and other co-workers.

52.    As a direct and proximate result of Mr. Kichibata's actions, Plaintiff was left to his own devices to learn his job independently.

53.    On or about June 6, 2020, Plaintiff complained to Mr. Elerts about the unequal and unfair treatment by Mr. Kichibata. Mr. Elerts took no meaningful or substantial action.

54.    On or about March 2020, Plaintiff received a "successful" four-month evaluation, despite the lack of training and support from Mr. Kichibata, and Mr. Elerts failure to address Plaintiff's complaint.

55.    Shortly thereafter, Ms. Kosolariaman was hired as Plaintiff's first-line supervisor, and Plaintiff advanced his complaints of discrimination, disparate treatment, a hostile work environment, and failure to train to Ms. Kosolariaman. Ms. Kosolariaman took no meaningful or substantive actions to remedy or address Plaintiff's concerns.

9

56.    On or about March 17, 2020, Plaintiff's team was ordered to work remotely due to the COVID-19 pandemic.

57.    As a direct and proximate result of the COVID-19 remote work order, meetings were reduced to telecommunications mediums such as Zoom.

58.    Plaintiff's team members included but is not limited to Senior Engineers Scott Smith (Caucasian) and Kiran Kichibata (Indian); and Analysts Marites Tating (Pilipino), Hedy Jao (Japanese), Michael Thome (Caucasian), Donna Grifis (Caucasian), and Kevin McDowell (Caucasian).

59.    Between March 17, 2020 and Plaintiff's unlawful, discriminatory, and retaliatory termination, Plaintiff was regularly excluded from meeting invitations, excluded from meetings, and excluded from communications specific and crucial to his role in projects and workflow processes.

60.    On or about August 2020, Plaintiff filed a complaint about Plaintiff being excluded from the Fund's "bulletin board."

61.    The Fund's "bulletin board" was set up to field and accept complaints, anonymous or otherwise, about subject-matters related to the Black Lives Matter movement. It was intended as a way for staff to be able to express themselves in regard to work matters of concern to them.

62.    Although Plaintiff filed an anonymous complaint via the "bulletin board", Human Resources reached out to Plaintiff to discuss with him the nature of his complaint. Thus, Plaintiff has a good-faith believe that management—Mr. Elerts and Ms. Kosaloaraman were aware of his complaints.

63. Despite not receiving proper training and support, on or about November 12, 2020, Mr. Elerts issued Plaintiff written counseling that was inherently negative, stating he was failing in his role, rude, and not a team player.

64. On or about September 10, 2020, Plaintiff emailed a complaint to Mr. Elerts and Ms. Kosolariaman again stating that he was further being ostracized and inquired about what they had done and/or were doing to look into his prior complainants. Neither Mr. Elerts or Ms. Kosolariaman provided any type of substantive response.

65. On or about December 3, 2020, Plaintiff was issued a notice of termination, effective December 15, 2020 based on alleged performance deficiencies.

66. Upon information and belief, Plaintiff asserts Defendants subjected him to discrimination, disparate treatment, and a hostile work environment based on his race and national origin (Black/African American, American) compared to similarly situated employees.

67. Upon information and belief, Plaintiff asserts Defendants subjected him to unequal terms and conditions of employments compared to similarly situated employees.

68. Upon information and belief, Plaintiff believes that Defendants' reasons for his poor performance evaluation and termination were based on discriminatory animus and are pretext based on his race and national origin, and in retaliation for his prior complaints of discrimination, disparate treatment, and a hostile work environment.

69. As a direct and proximate result of Defendants' unlawful discriminatory and retaliatory conduct and actions, which were willful, malicious, and in reckless disregard to Plaintiff's privileges and rights, and made under the color of law, Plaintiff has suffered actual and real damages (compensatory damages) for the significant loss of income and benefits (front pay, back pay, and benefits (retirement, medical insurance, and sick and vacation time).

70.    As a direct and proximate result of Defendants' unlawful discriminatory and retaliatory conduct and actions, which were willful, malicious, and in reckless disregard to Plaintiff's privileges and rights, and made under the color of law, Plaintiff has suffered non-economic damages (pain and suffering).

71.    As a direct and proximate result of Defendants' unlawful conduct and actions, which were willful, malicious, and in reckless disregard to Plaintiff's privileges and rights, and made under the color of law, Plaintiff suffered severe stress and anxiety.

72.    As a direct and proximate result of Defendants' unlawful conduct and actions, which were willful, malicious, and in reckless disregard to Plaintiff's privileges and rights, and made under the color of law, Plaintiff suffered mental anguish, fright, nervousness, anxiety, worry, humiliation, and shame from the loss of his employment.

73.    As a direct and proximate result of Defendants' unlawful discriminatory and retaliatory conduct and actions, and the disparate treatment, which were willful, malicious, and in reckless disregard to Plaintiff's privileges and rights, and made under the color of law, Plaintiff is entitled to punitive damages.

74.    As a direct and proximate result of Defendants' unlawful discriminatory and retaliatory conduct and actions, which were willful, malicious, and in reckless disregard to Plaintiff's privileges and rights, and made under the color of law, Plaintiff is entitled to attorneys' fees and costs related to the filing of this action.

## COUNT 1
## RACE DISCRIMINATION AND RETALIATION IN VIOLATION OF § 1981
### (Hostile Work Environment – Against ALL Defendants)

75.    Plaintiff alleges and incorporates each of the factual allegations set forth above in the preceding paragraphs as if fully set forth herein.

76.    42 U.S.C. § 1981 guarantees that all person shall have the right to make and enforce contracts, including employment contracts free from all forms of discrimination on the basis of race and national origin.

77.    Section 1981 also prohibits retaliation against individuals who make complaints about racial, national origin discrimination, and disparate treatment in the creation and/or enforcement of contracts, including contracts for terms and condition of employment.

78.    The right to be free from racial and national origin discrimination, disparate treatment, a hostile work environment, and retaliation for assertion of one's civil rights are clearly and well-established rights, known to each of the Defendants in this action throughout the time period of the allegation in this Complaint.

79.    Throughout his employment Plaintiff was subjected to unequal terms and conditions of employment based on his race and national origin compared to non-African American/non-Black counterparts.

80.    Non-African American/non-Black counterparts were provided detailed onboarding, training, and Fund infrastructure support.

81.    Non-African American/non-Black counterparts were not left out of project communications and meetings crucial to their projects.

82.    Non-African American/non-Black counterparts were given full instruction and support on projects.

83.    Non-African American/non-Black counterparts were not ostracized from the team they were working with.

84.    Non-African American/non-Black counterparts were not excluded from the "bulletin board."

13

85.    Throughout his employment, Plaintiff complained to Mr. Elerts and Ms. Kosolariaman about the disparate treatment and hostile work environment he was being subjected to by Mr. Kichibata. Plaintiff complaints about these issues beginning in March 2020 and his complaints continued throughout his employment.

86.    Supervisory personnel, including, but not limited to Defendants' Elerts and Kosolariaman were aware of the racial and national origin discrimination, disparate treatment, and hostile work environment against Plaintiff and either failed to remedy the hostile work environment, or actively participated in creating the disparate treatment and hostile work environment.

87.    The behavior by the above listed Defendants occurred when the Defendants were acting within the scope of their employment.

88.    Defendants' discriminatory practices have caused Plaintiff harm, including, but not limited to lost wages and benefits, and emotion distress.

89.    Accordingly, Defendants' have violated Plaintiff's rights as protected by 42 U.S.C. 1981.

90.    Defendants subjected Plaintiff to discrimination on the basis of his race and national origin (African American/Black) in violation the Civil Rights Act of 1991, and thus may recover under §1981 by:

      a.    Creating and maintaining a hostile and harassing work environment that adversely affected the terms, conditions, and privileges of Plaintiff's employment;

      b.    Creating a hostile and harassing work environment that was so severe and pervasive that Plaintiff was unable to effectively perform the essential functions of his job.

14

c. Creating a maintaining a hostile work environment by unlawfully terminating Plaintiff's employment on December 3, 2020, effective December 15, 2020.

d. Failing and/or refusing to take appropriate actions to remedy the effects of the discriminatory treatment by Mr. Kichibata and Ms. Kosolariaman; and

e. Failing and/or refusing to substantively address Plaintiff's complaints of discrimination, disparate treatment, hostile work environment.

WHEREFORE, judgment should be entered against the Defendants for compensatory damages and punitive damages under §1981 and any and all additional relief authorized under the law, including but not limited to back pay, front pay, unpaid compensation, additional equal amounts as liquidated damages, compensatory damages, punitive damages, reasonable attorneys' fees, all costs associated with the litigation, pre-judgment and post-judgment interest, and any other relief the Court or a jury deems appropriate.

## COUNT II
### RACE DISCRIMINATION AND RETALIATION IN VIOLATION OF § 1981
(Termination – Against ALL Defendants)

91. Plaintiff alleges and incorporates each of the factual allegations as set forth above in the preceding paragraphs as if fully set forth herein.

92. 42 U.S.C. § 1981 guarantees that all person shall have the right to make and enforce contracts, including employment contracts free from all forms of discrimination on the basis of race and national origin.

93. Section 1981 also prohibits retaliation against individuals who make complaints about racial and national origin discrimination and disparate treatment in the creation and/or enforcement of contracts, including contracts for terms and condition of employment.

15

94.    The right to be free from racial and national origin discrimination, disparate treatment, and a hostile work environment, and retaliation for assertion of one's civil rights are clearly and well-established rights, known to each of the Defendants in this action throughout the time period of the allegation in this Complaint.

95.    Plaintiff had a reasonable basis in law and fact, and a federally-protected right to file his complaints against Defendants as to the racial and national origin discrimination, disparate treatment, and hostile work environment he experienced in his training and throughout his employment because it determinately affected his ability to effectively perform the duties of his job and subjected him to unequal terms and conditions of employment.

96.    Throughout his employment Plaintiff was subjected to unequal terms and conditions of employment based on his race and/or national origin compared to non-African American/non-Black counterparts.

97.    Non-African American/non-Black counterparts were provided detailed onboarding, training, and Fund infrastructure support.

98.    Non-African American/non-Black counterparts were not left out of project communications and meetings crucial to their projects.

99.    Non-African American/non-Black counterparts were given full instruction and support on projects.

100.    Non-African American/non-Black counterparts were not ostracized from the team they were working with.

101.    Non-African American/non-Black counterparts were not excluded from the "bulletin board."

16

102. Throughout his employment, Plaintiff complained to Mr. Elerts and Ms. Kosolariaman about the disparate treatment and hostile work environment he was being subjected to by Mr. Kichibata. Plaintiff complaints about these issues beginning in March 2020 and his complaints continued throughout his employment.

103. Supervisory personnel, including, but not limited to Defendants' Elerts and Kosaloaraman were aware of the racial and national origin discrimination, disparate treatment, and hostile work environment against Plaintiff and either failed to remedy the hostile work environment, or actively participated in creating the hostile work environment.

104. Plaintiff was terminated from his employment by Defendant Fund on December 3, 2020, effective, December 15, 2020. This termination was motivated in whole or in part by Defendants in retaliation and/or was an act of retaliation for Plaintiff engaging in protected activity.

105. The behavior by the above listed Defendants occurred when the Defendants were acting within the scope of their employment.

106. Defendants' discriminatory practices have caused Plaintiff harm, including, but not limited to lost wages and benefits, and emotion distress.

107. Accordingly, Defendants' have violated Plaintiff's rights as protected by 42 U.S.C. 1981.

108. Defendants subjected Plaintiff to discrimination on the basis of his race (African American/Black) in violation the Civil Rights Act of 1991, and thus may recover under §1981 by:

        a. Creating and maintaining a hostile and harassing work environment that adversely affected the terms, conditions, and privileges of Plaintiff's employment;

17

b.  Creating a hostile and harassing work environment that was so severe and pervasive that Plaintiff was unable to effectively perform the essential functions of his job.

c.  Creating a maintaining a hostile work environment by unlawfully terminating Plaintiff's employment on December 3, 2020, effective December 15, 2020.

d.  Failing and/or refusing to take appropriate actions to remedy the effects of the discriminatory treatment by Mr. Kichibata and Ms. Kosolariaman and

e.  Failing and/or refusing to substantively address Plaintiff's complaints of discrimination, disparate treatment, hostile work environment.

WHEREFORE, judgment should be entered against the Defendants for compensatory damages and punitive damages under §1981 and any and all additional relief authorized under the law, including but not limited to back pay, front pay, unpaid compensation, additional equal amounts as liquidated damages, compensatory damages, punitive damages, reasonable attorneys' fees, all costs associated with the litigation, pre-judgment and post-judgment interest, and any other relief the Court or a jury deems appropriate.

## COUNT III
### RACE DISCRIMINATION AND RETALIATION IN VIOLATION OF § 1983 FOURTEENTH AMENDMENT EQUAL PROTECTION CLAUSE
#### (Hostile Work Environment – Against ALL Defendants)

109.  Plaintiff herein incorporates all information the allegations set forth above in the preceding paragraphs as if fully set forth herein.

110.  42 U.S.C. § 1983 protects against the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws" by persons acting under the color of law.

111.  All Defendants are "persons" within the meaning of 42 U.S.C. § 1983.

112.    Defendants created a hostile work environment because of Plaintiff's race and/or national origin by failing to train him, by excluding him from communication and meetings that would allow him to effectively perform the duties of his job; by issuing him an unwarranted poor performance evaluation; by ignoring Plaintiff's complaints of discrimination, disparate treatment, and a hostile work environment; by terminating Plaintiff's employment without just cause.

113.    Throughout his employment, Plaintiff complained to Mr. Elerts and Ms. Kosolariaman about the disparate treatment and hostile work environment he was being subjected to by Mr. Kichibata. Plaintiff complaints about these issues beginning in March 2020 and his complaints continued throughout his employment.

114.    Defendants Elerts and Kosolariaman failed to intervene and stop the hostile work environment and/or participated in the hostile work environment based on Plaintiff race and/or national origin.

115.    Plaintiff was retaliated against when, on or about November 12, 2020, Defendants issued Plaintiff an unwarranted written counseling, and on December 3, 2020, Defendant Fund terminated Plaintiff's employment under the pretext of job performance/deficiencies.

116.    Plaintiff's termination was in close proximity to the filing of his complaints of discrimination, disparate treatment, and a hostile work environment, which began at the onset of his employment in December 2019, and in which he filed the last complaint, just weeks prior to his termination.

117.    Defendants subjected Plaintiff to retaliation in violation of the Civil Rights Act of 1991, and thus may recover under §1983, by:

a.  Creating and maintaining a hostile and harassing work environment that adversely affected the terms, conditions, and privileges of Plaintiff's employment;

b.  Creating a hostile and harassing work environment that was so severe and pervasive that Plaintiff was unable to effectively perform the essential functions of his job;

c.  Creating a maintaining a hostile work environment by unlawfully terminating Plaintiff's employment on December 3, 2020, effective December 15, 2020 under the pretext of job performance/deficiencies;

d.  Failing and/or refusing to take appropriate actions to remedy the effects of the discriminatory treatment by Mr. Kichibata and Ms. Kosolariaman; and

e.  Failing and/or refusing to substantive address Plaintiff's complaints of discrimination, disparate treatment, hostile work environment.

118.    Plaintiff had a good faith and reasonable basis to complain about the race and national origin discrimination, disparate treatment, and hostile work environment, constituting protected activity under 42 U.S.C. § 1983.

119.    Defendant Fund is an instrumentality of the State of California and is liable under 42 U.S.C. § 1983 because a custom, practice, or policy of the Fund caused the violations to Plaintiff's constitutional rights, and/or because Defendants with final policymaking authority, or decision-making authority, caused the violations of Plaintiff's constitutional rights.

120.    Moreover, the hostile work environment was caused by or was a custom of Defendant Fund.

20

121. At all times relevant, Defendants, and their agents were acting under the color of the laws, customs and usages of the State of California within the meaning of 42 U.S.C. § 1983.

122. The behavior by the above-listed Defendants occurred when the Defendants were acting within the scope of their employment and used incidents and tools of their employments.

123. Defendants' discriminatory and retaliatory practices have caused Plaintiff severe emotional distress and ultimately led to his termination.

124. Accordingly, Defendants have violated Plaintiff's right to equal protection under the Fourteenth Amendment to the United States Constitution.

WHEREFORE, judgment should be entered against the Defendants for compensatory damages and punitive damages under §1983 and any and all additional relief authorized under the law, including but not limited to back pay, front pay, unpaid compensation, additional equal amounts as liquidated damages, compensatory damages, punitive damages, reasonable attorneys' fees, all costs associated with the litigation, pre-judgment and post-judgment interest, and any other relief the Court or a jury deems appropriate.

## COUNT IV
### RACE DISCRIMINATION AND RETALIATION IN VIOLATION OF § 1983
### FOURTEENTH AMENDMENT EQUAL PROTECTION CLAUSE
### (Disparate Treatment – Against ALL Defendants)

125. Plaintiff herein incorporates all information the allegations set forth above in the preceding paragraphs as if fully set forth herein.

126. 42 U.S.C. § 1983 protects against the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws" by persons acting under the color of law.

127. All Defendants are "persons" within the meaning of 42 U.S.C. § 1983.

128. Defendant Fund is an instrumentality of the State of California and is liable under 42 U.S.C. § 1983 because a custom, practice, or policy of the Fund caused the violations to

21

Plaintiff's constitutional rights, and/or because Defendants with final policymaking authority, or decision-making authority, caused the violations of Plaintiff's constitutional rights.

129. Defendants subjected Plaintiff to disparate treatment by created a hostile work environment by failing to train Plaintiff, by excluding him from communication and meetings that would allow him to effectively perform the duties of his job; by issuing him an unwarranted poor performance evaluation; by ignoring Plaintiff's complaints of discrimination, disparate treatment, and a hostile work environment; by terminating Plaintiff's employment without just cause.

130. Throughout his employment, Plaintiff complained to Mr. Elerts and Ms. Kosolariaman about the disparate treatment and hostile work environment he was being subjected to by Mr. Kichibata. Plaintiff complaints about these issues beginning in March 2020 and his complaints continued throughout his employment.

131. Defendants Elerts and Kosolariaman failed to intervene and stop the disparate treatment and hostile work environment and/or participated in the hostile work environment based on Plaintiff's race and/or national origin.

132. Defendants further subjected Plaintiff to disparate treatment and a hostile work environment when Defendants retaliated against Plaintiff when, on or about November 12, 2020, Defendants issued Plaintiff a written reprimand based on work conduct and on unwarranted poor performance, and on December 3, 2020, Defendant Fund terminated Plaintiff's employment under the pretext of job performance/deficiencies.

133. Throughout Plaintiff's employment he was written up and/or reprimanded for projects not completed on schedule, however, to Plaintiff's knowledge only a few projects were ever

22

completed on schedule and no other telecommunications engineers, senior engineers, or analysts were ever written up or reprimanded for failing to meet deadlines.

134.     Plaintiff's termination was in close proximity to the filing of his complaints of discrimination, disparate treatment, and a hostile work environment, which  began at the onset of his employment in December 2019, and continued until just weeks prior to his termination.

135.     Defendants subjected Plaintiff to retaliation in violation of the Civil Rights Act of 1991, and thus may recover under §1983,  by:

a.  Creating and maintaining a work environment that adversely affected the terms, conditions, and privileges of Plaintiff's employment;

b.  Creating a hostile and harassing work environment that was so severe and pervasive that Plaintiff was unable to effectively perform the essential functions of his job;

c.  Creating a maintaining a hostile work environment by unlawfully terminating Plaintiff's employment on December 3, 2020, effective December 15, 2020 under the pretext of job performance/deficiencies;

d.  Failing and/or refusing to take appropriate actions to remedy the effects of the discriminatory treatment by Mr. Kichibata and Ms. Kosolariaman; and

e.  Failing and/or refusing to substantive address Plaintiff's complaints of discrimination, disparate treatment, hostile work environment.

136.     Plaintiff had a good faith and reasonable basis to complain about the race discrimination, disparate treatment, and hostile work environment, constituting protected activity under 42 U.S.C. § 1983.

137. Moreover, the hostile work environment was caused by or was a custom of Defendant Fund.

138. At all times relevant, Defendants, and their agents were acting under the color of the laws, customs and usages of the State of California within the meaning of 42 U.S.C. § 1983.

139. The behavior by the above-listed Defendants occurred when the Defendants were acting within the scope of their employment and used incidents and tools of their employments.

140. Defendants' disparate treatment and discriminatory and retaliatory practices have caused Plaintiff severe emotional distress and ultimately led to his termination.

141. Accordingly, Defendants have violated Plaintiff's right to equal protection under the Fourteenth Amendment to the United States Constitution.

WHEREFORE, judgment should be entered against the Defendants for compensatory damages and punitive damages under §1983 and any and all additional relief authorized under the law, including but not limited to back pay, front pay, unpaid compensation, additional equal amounts as liquidated damages, compensatory damages, punitive damages, reasonable attorneys' fees, all costs associated with the litigation, pre-judgment and post-judgment interest, and any other relief the Court or a jury deems appropriate.

## COUNT V
### RACE DISCRIMINATION AND RETALIATION IN VIOLATION OF § 1983
### FOURTEENTH AMENDMENT EQUAL PROTECTION CLAUSE
### (Termination – Against ALL Defendants)

142. Plaintiff herein incorporates all information the allegations set forth above in the preceding paragraphs as if fully set forth herein.

143. 42 U.S.C. § 1983 protects against the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws" by persons acting under the color of law.

144. All Defendants are "persons" within the meaning of 42 U.S.C. § 1983.

24

145.    Defendant Fund is an instrumentality of the State of California and is liable under 42 U.S.C. § 1983 because a custom, practice, or policy of the Fund caused the violations to Plaintiff's constitutional rights, and/or because Defendants with final policymaking authority, or decision-making authority, caused the violations of Plaintiff's constitutional rights.

146.    Defendants subjected Plaintiff to disparate treatment by created a hostile work environment by failing to train Plaintiff, by excluding him from communication and meetings that would allow him to effectively perform the duties of his job; by issuing him an unwarranted poor performance evaluation; by ignoring Plaintiff's complaints of discrimination, disparate treatment, and a hostile work environment; by terminating Plaintiff's employment without just cause.

147.    Throughout his employment, Plaintiff complained to Mr. Elerts and Ms. Kosolariaman about the disparate treatment and hostile work environment he was being subjected to by Mr. Kichibata. Plaintiff complaints about these issues beginning in March 2020 and his complaints continued throughout his employment.

148.    Defendants Elerts and Kosaloaraman failed to intervene and stop the disparate treatment and hostile work environment and/or participated in the  hostile work environment based on Plaintiff's race and/or national origin.

149.    Defendants further subjected Plaintiff to disparate treatment when Defendants retaliated against Plaintiff when, on or about November 12, 2020, Defendants issued Plaintiff an unwarranted written reprimand based on conduct and poor performance, and on December 3, 2020, Defendant Fund terminated Plaintiff's employment under the pretext of job performance/deficiencies.

150.    Plaintiff's termination was in close proximity to the filing of his complaints of discrimination, disparate treatment, and a hostile work environment, which  began at the onset of his employment in December 2019, and continued throughout his employment until his termination.

151.    Defendants subjected Plaintiff to retaliation in violation of the Civil Rights Act of 1991, and thus may recover under §1983,  by:

    a.  Creating and maintaining a work environment that adversely affected the terms, conditions, and privileges of Plaintiff's employment;

    b.  Creating a hostile and harassing work environment that was so severe and pervasive that Plaintiff was unable to effectively perform the essential functions of his job;

    c.  Creating a maintaining a hostile work environment by unlawfully terminating Plaintiff's employment on December 3, 2020, effective December 15, 2020 under the pretext of job performance/deficiencies;

    d.  Failing and/or refusing to take appropriate actions to remedy the effects of the discriminatory treatment by Mr. Kichibata and Ms. Kosolariaman; and

    e.  Failing and/or refusing to substantive address Plaintiff's complaints of discrimination, disparate treatment, hostile work environment.

152.    Plaintiff had a good faith and reasonable basis to complain about the race discrimination, disparate treatment, and hostile work environment, constituting protected activity under 42 U.S.C. § 1983.

153.    Moreover, the hostile work environment was caused by or was a custom of Defendant Fund.

154. At all times relevant, Defendants, and their agents were acting under the color of the laws, customs and usages of the State of California within the meaning of 42 U.S.C. § 1983.

155. The behavior by the above-listed Defendants occurred when the Defendants were acting within the scope of their employment and used incidents and tools of their employments.

156. Defendants' disparate treatment and discriminatory and retaliatory practices have caused Plaintiff severe emotional distress and ultimately led to his termination.

157. Accordingly, Defendants have violated Plaintiff's right to equal protection under the Fourteenth Amendment to the United States Constitution.

WHEREFORE, judgment should be entered against the Defendants for compensatory damages and punitive damages under §1983 and any and all additional relief authorized under the law, including but not limited to back pay, front pay, unpaid compensation, additional equal amounts as liquidated damages, compensatory damages, punitive damages, reasonable attorneys' fees, all costs associated with the litigation, pre-judgment and post-judgment interest, and any other relief the Court or a jury deems appropriate.

**COUNT VI**
**NATIONAL ORIGIN DISCRIMINATION AND RETALIATION IN VIOLATION OF §**
**1981**
**(Hostile Work Environment – Against ALL Defendants)**

158. Plaintiff alleges and incorporates each of the factual allegations as set forth above in the preceding paragraphs as if fully set forth herein.

159. 42 U.S.C. § 1981 guarantees that all person shall have the right to make and enforce contracts, including employment contracts free from all forms of discrimination on the basis of race.

160. Section 1981 also prohibits a hostile work environment and retaliation against individuals who make complaints about racial and/or national origin discrimination and disparate treatment

in the creation and/or enforcement of contracts, including contracts for terms and condition of employment.

161.    The right to be free from racial and national origin discrimination, disparate treatment, and a hostile work environment, and retaliation for assertion of one's civil rights are clearly and well-established rights, known to each of the Defendants in this action throughout the time period of the allegation in this Complaint.

162.    Plaintiff had a reasonable basis in law and fact, and a federally-protected right to file his complaints against Defendants as to the racial and national origin discrimination, disparate treatment, and hostile work environment he experienced in his training and throughout his employment because it determinately affected his ability to effectively perform the duties of his job and subjected him to unequal terms and conditions of employment.

163.    Throughout his employment Plaintiff was subjected to unequal terms and conditions of employment compared to non-African American/non-Black counterparts.

164.    Non-African American/non-Black counterparts were provided detailed onboarding, training, and Fund infrastructure support.

165.    Non-African American/non-Black counterparts were not left out of project communications and meetings crucial to their projects.

166.    Non-African American/non-Black counterparts were given full instruction and support on projects.

167.    Non-African American/non-Black counterparts were not ostracized from the team they were working with.

168.    Non-African American/non-Black counterparts were not excluded from the "bulletin board."

28

169. Throughout his employment, Plaintiff complained to Mr. Elerts and Ms. Kosolariaman about the disparate treatment and hostile work environment he was being subjected to by Mr. Kichibata. Plaintiff complaints about these issues beginning in March 2020 and his complaints continued throughout his employment.

170. Supervisory personnel, including, but not limited to Defendants Elerts and Kosaloaraman were aware of the racial and national origin discrimination, disparate treatment, and hostile work environment against Plaintiff and either failed to remedy the hostile work environment, or actively participated in creating the hostile work environment.

171. Plaintiff was terminated from his employment by Defendant Fund on December 3, 2020, effective, December 15, 2020. This termination was motivated in whole or in part by Defendants in retaliation and/or was an act of retaliation for Plaintiff engaging in protected activity.

172. The behavior by the above listed Defendants occurred when the Defendants were acting within the scope of their employment.

173. Defendants' discriminatory practices have caused Plaintiff harm, including, but not limited to lost wages and benefits, and emotion distress.

174. Accordingly, Defendants' have violated Plaintiff's rights as protected by 42 U.S.C. 1981.

175. Defendants subjected Plaintiff to discrimination on the basis of his race (African American/Black) in violation the Civil Rights Act of 1991, and thus may recover under §1981 by:

      a. Creating and maintaining a work environment that adversely affected the terms, conditions, and privileges of Plaintiff's employment;

b. Creating a hostile and harassing work environment that was so severe and pervasive that Plaintiff was unable to effectively perform the essential functions of his job.

c. Creating a maintaining a hostile work environment by unlawfully terminating Plaintiff's employment on December 3, 2020, effective December 15, 2020.

d. Failing and/or refusing to take appropriate actions to remedy the effects of the discriminatory treatment by Mr. Kichibata and Ms. Kosolariaman and

e. Failing and/or refusing to substantively address Plaintiff's complaints of discrimination, disparate treatment, hostile work environment.

WHEREFORE, judgment should be entered against the Defendants for compensatory damages and punitive damages under §1981 and any and all additional relief authorized under the law, including but not limited to back pay, front pay, unpaid compensation, additional equal amounts as liquidated damages, compensatory damages, punitive damages, reasonable attorneys' fees, all costs associated with the litigation, pre-judgment and post-judgment interest, and any other relief the Court or a jury deems appropriate.

## COUNT VII
## NATIONAL ORIGIN DISCRIMINATION AND RETALIATION IN VIOLATION OF § 1981
### (Termination – Against ALL Defendants)

176. Plaintiff alleges and incorporates each of the factual allegations as set forth above in the preceding paragraphs as if fully set forth herein.

177. 42 U.S.C. § 1981 guarantees that all person shall have the right to make and enforce contracts, including employment contracts free from all forms of discrimination on the basis of race.

30

178. Section 1981 also prohibits retaliation against individuals who make complaints about racial discrimination and disparate treatment in the creation and/or enforcement of contracts, including contracts for terms and condition of employment.

179. The right to be free from racial and national origin discrimination, disparate treatment, and a hostile work environment, and retaliation for assertion of one's civil rights are clearly and well-established rights, known to each of the Defendants in this action throughout the time period of the allegation in this Complaint.

180. Plaintiff had a reasonable basis in law and fact, and a federally-protected right to file his complaints against Defendants as to the racial and national origin discrimination, disparate treatment, and hostile work environment he experienced in his training and throughout his employment because it determinately affected his ability to effectively perform the duties of his job and subjected him to unequal terms and conditions of employment.

181. Throughout his employment Plaintiff was subjected to unequal terms and conditions of employment compared to non-African American/non-Black counterparts.

182. Non-African American/non-Black counterparts were provided detailed onboarding, training, and Fund infrastructure support.

183. Non-African American/non-Black counterparts were not left out of project communications and meetings crucial to their projects.

184. Non-African American/non-Black counterparts were given full instruction and support on projects.

185. Non-African American/non-Black counterparts were not ostracized from the team they were working with.

31

186. Non-African American/non-Black counterparts were not excluded from the "bulletin board."

187. Throughout his employment, Plaintiff complained to Mr. Elerts and Ms. Kosolariaman about the disparate treatment and hostile work environment he was being subjected to by Mr. Kichibata. Plaintiff complaints about these issues beginning in March 2020 and his complaints continued throughout his employment.

188. Supervisory personnel, including, but not limited to Defendants' Elerts and Kosaloaraman were aware of the racial and national origin discrimination, disparate treatment, and hostile work environment against Plaintiff and either failed to remedy the hostile work environment, or actively participated in creating the hostile work environment.

189. Plaintiff was terminated from his employment by Defendant Fund on December 3, 2020, effective, December 15, 2020. This termination was motivated in whole or in part by Defendants in retaliation and/or was an act of retaliation for Plaintiff engaging in protected activity.

190. The behavior by the above listed Defendants occurred when the Defendants were acting within the scope of their employment.

191. Defendants' discriminatory practices have caused Plaintiff harm, including, but not limited to lost wages and benefits, and emotion distress.

192. Accordingly, Defendants' have violated Plaintiff's rights as protected by 42 U.S.C. 1981.

193. Defendants subjected Plaintiff to discrimination on the basis of his race (African American/Black) in violation the Civil Rights Act of 1991, and thus may recover under §1981 by:

    a. Creating and maintaining a work environment that adversely affected the terms, conditions, and privileges of Plaintiff's employment;

32

b. Creating a hostile and harassing work environment that was so severe and pervasive that Plaintiff was unable to effectively perform the essential functions of his job.

c. Creating a maintaining a hostile work environment by unlawfully terminating Plaintiff's employment on December 3, 2020, effective December 15, 2020.

d. Failing and/or refusing to take appropriate actions to remedy the effects of the discriminatory treatment by Mr. Kichibata and Ms. Kosolariaman and

e. Failing and/or refusing to substantively address Plaintiff's complaints of discrimination, disparate treatment, hostile work environment.

WHEREFORE, judgment should be entered against the Defendants for compensatory damages and punitive damages under §1981 and any and all additional relief authorized under the law, including but not limited to back pay, front pay, unpaid compensation, additional equal amounts as liquidated damages, compensatory damages, punitive damages, reasonable attorneys' fees, all costs associated with the litigation, pre-judgment and post-judgment interest, and any other relief the Court or a jury deems appropriate.

## COUNT VIII
### NATIONAL ORIGIN DISCRIMINATION AND RETALIATION IN VIOLATION OF § 1983
### FOURTEENTH AMENDMENT EQUAL PROTECTION CLAUSE
#### (Hostile Work Environment – Against ALL Defendants)

194. Plaintiff herein incorporates all information the allegations set forth above in the preceding paragraphs as if fully set forth herein.

195. 42 U.S.C. § 1983 protects against the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws" by persons acting under the color of law.

196. All Defendants are "persons" within the meaning of 42 U.S.C. § 1983.

33

197.    Defendants created a hostile work environment because of Plaintiff's race and/or national origin by failing to train him, by excluding him from communication and meetings that would allow him to effectively perform the duties of his job; by issuing him an unwarranted poor performance evaluation; by ignoring Plaintiff's complaints of discrimination, disparate treatment, and a hostile work environment; by terminating Plaintiff's employment without just cause.

198.    Throughout his employment, Plaintiff complained to Mr. Elerts and Ms. Kosolariaman about the disparate treatment and hostile work environment he was being subjected to by Mr. Kichibata. Plaintiff complaints about these issues beginning in March 2020 and his complaints continued throughout his employment.

199.    Defendants Elerts and Kosaloaraman failed to intervene and stop the racially hostile work environment and/or participated in the hostile work environment based on Plaintiff's race and/or national origin.

200.    Plaintiff was retaliated against when, on or about November 12, 2020, Defendants issued Plaintiff an unwarranted written reprimand for poor conduct and poor performance, and on December 3, 2020, Defendant Fund terminated Plaintiff's employment under the pretext of job performance/deficiencies.

201.    Plaintiff's termination was in close proximity to the filing of his complaints of discrimination, disparate treatment, and a hostile work environment, which began at the onset of his employment in December 2019, and continued until just weeks prior to his termination.

202.    Defendants subjected Plaintiff to retaliation in violation of the Civil Rights Act of 1991, and thus may recover under §1983, by:

34

a. Creating and maintaining a work environment that adversely affected the terms, conditions, and privileges of Plaintiff's employment;

b. Creating a hostile and harassing work environment that was so severe and pervasive that Plaintiff was unable to effectively perform the essential functions of his job;

c. Creating a maintaining a hostile work environment by unlawfully terminating Plaintiff's employment on December 3, 2020, effective December 15, 2020 under the pretext of job performance/deficiencies;

d. Failing and/or refusing to take appropriate actions to remedy the effects of the discriminatory treatment by Mr. Kichibata and Ms. Kosolariaman; and

e. Failing and/or refusing to substantive address Plaintiff's complaints of discrimination, disparate treatment, hostile work environment.

203.    Plaintiff had a good faith and reasonable basis to complain about the race discrimination, disparate treatment, and hostile work environment, constituting protected activity under 42 U.S.C. § 1983.

204.    Defendant Fund is an instrumentality of the State of California and is liable under 42 U.S.C. § 1983 because a custom, practice, or policy of the Fund caused the violations to Plaintiff's constitutional rights, and/or because Defendants with final policymaking authority, or decision-making authority, caused the violations of Plaintiff's constitutional rights.

205.    Moreover, the hostile work environment was caused by or was a custom of Defendant Fund.

206.    At all times relevant, Defendants, and their agents were acting under the color of the laws, customs and usages of the State of California within the meaning of 42 U.S.C. § 1983.

35

207.    The behavior by the above-listed Defendants occurred when the Defendants were acting within the scope of their employment and used incidents and tools of their employments.

208.    Defendants' discriminatory and retaliatory practices have caused Plaintiff severe emotional distress and ultimately led to his termination.

209.    Accordingly, Defendants have violated Plaintiff's right to equal protection under the Fourteenth Amendment to the United States Constitution.

WHEREFORE, judgment should be entered against the Defendants for compensatory damages and punitive damages under §1983 and any and all additional relief authorized under the law, including but not limited to back pay, front pay, unpaid compensation, additional equal amounts as liquidated damages, compensatory damages, punitive damages, reasonable attorneys' fees, all costs associated with the litigation, pre-judgment and post-judgment interest, and any other relief the Court or a jury deems appropriate.

## COUNT IX
### NATIONAL ORIGIN DISCRIMINATION AND RETALIATION IN VIOLATION OF § 1983
### FOURTEENTH AMENDMENT EQUAL PROTECTION CLAUSE
#### (Disparate Treatment – Against ALL Defendants)

210.    Plaintiff herein incorporates all information the allegations set forth above in the preceding paragraphs as if fully set forth herein.

211.    42 U.S.C. § 1983 protects against the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws" by persons acting under the color of law.

212.    All Defendants are "persons" within the meaning of 42 U.S.C. § 1983.

213.    Defendant Fund is an instrumentality of the State of California and is liable under 42 U.S.C. § 1983 because a custom, practice, or policy of the Fund caused the violations to

36

Plaintiff's constitutional rights, and/or because Defendants with final policymaking authority, or decision-making authority, caused the violations of Plaintiff's constitutional rights.

214.    Defendants subjected Plaintiff to disparate treatment by created a hostile work environment by failing to train Plaintiff, by excluding him from communication and meetings that would allow him to effectively perform the duties of his job; by issuing him an unwarranted poor performance evaluation; by ignoring Plaintiff's complaints of discrimination, disparate treatment, and a hostile work environment; by terminating Plaintiff's employment without just cause.

215.    Throughout his employment, Plaintiff complained to Mr. Elerts and Ms. Kosolariaman about the disparate treatment and hostile work environment he was being subjected to by Mr. Kichibata. Plaintiff complaints about these issues beginning in March 2020 and his complaints continued throughout his employment.

216.    Defendants Elerts and Kosaloaraman failed to intervene and stop the disparate treatment and hostile work environment and/or participated in the hostile work environment based on Plaintiff's race and/or national origin.

217.    Defendants further subjected Plaintiff to disparate treatment when Defendants retaliated against Plaintiff when, on or about November 12, 2020, Defendants issued Plaintiff an unwarranted written reprimand for bad conduct and poor performance, and on December 3, 2020, Defendant Fund terminated Plaintiff's employment under the pretext of job performance/deficiencies.

218.    Plaintiff's termination was in close proximity to the filing of his complaints of discrimination, disparate treatment, and a hostile work environment, which  began at the onset of his employment in December 2019, and continued until his  termination.

219. Defendants subjected Plaintiff to retaliation in violation of the Civil Rights Act of 1991, and thus may recover under §1983 by:

    a. Creating and maintaining a work environment that adversely affected the terms, conditions, and privileges of Plaintiff's employment;

    b. Creating a hostile and harassing work environment that was so severe and pervasive that Plaintiff was unable to effectively perform the essential functions of his job;

    c. Creating a maintaining a hostile work environment by unlawfully terminating Plaintiff's employment on December 3, 2020, effective December 15, 2020 under the pretext of job performance/deficiencies;

    d. Failing and/or refusing to take appropriate actions to remedy the effects of the discriminatory treatment by Mr. Kichibata and Ms. Kosolariaman; and

    e. Failing and/or refusing to substantive address Plaintiff's complaints of discrimination, disparate treatment, hostile work environment.

220. Plaintiff had a good faith and reasonable basis to complain about the race discrimination, disparate treatment, and hostile work environment, constituting protected activity under 42 U.S.C. § 1983.

221. Moreover, the hostile work environment was caused by or was a custom of Defendant Fund.

222. At all times relevant, Defendants, and their agents were acting under the color of the laws, customs and usages of the State of California within the meaning of 42 U.S.C. § 1983.

223. The behavior by the above-listed Defendants occurred when the Defendants were acting within the scope of their employment and used incidents and tools of their employments.

224.    Defendants' disparate treatment and discriminatory and retaliatory practices have caused Plaintiff severe emotional distress and ultimately led to his termination.

225.    Accordingly, Defendants have violated Plaintiff's right to equal protection under the Fourteenth Amendment to the United States Constitution.

WHEREFORE, judgment should be entered against the Defendants for compensatory damages and punitive damages under §1983 and any and all additional relief authorized under the law, including but not limited to back pay, front pay, unpaid compensation, additional equal amounts as liquidated damages, compensatory damages, punitive damages, reasonable attorneys' fees, all costs associated with the litigation, pre-judgment and post-judgment interest, and any other relief the Court or a jury deems appropriate.

## COUNT X
### NATIONAL ORIGIN DISCRIMINATION AND RETALIATION IN VIOLATION OF § 1983
### FOURTEENTH AMENDMENT EQUAL PROTECTION CLAUSE
(Termination – Against ALL Defendants)

226.    Plaintiff herein incorporates all information the allegations set forth above in the preceding paragraphs as if fully set forth herein.

227.    42 U.S.C. § 1983 protects against the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws" by persons acting under the color of law.

228.    All Defendants are "persons" within the meaning of 42 U.S.C. § 1983.

229.    Defendant Fund is an instrumentality of the State of California and is liable under 42 U.S.C. § 1983 because a custom, practice, or policy of the Fund caused the violations to Plaintiff's constitutional rights, and/or because Defendants with final policymaking authority, or decision-making authority, caused the violations of Plaintiff's constitutional rights.

230.    Defendants subjected Plaintiff to disparate treatment by created a hostile work environment by failing to train Plaintiff, by excluding him from communication and meetings that would allow him to effectively perform the duties of his job; by issuing him an unwarranted poor performance evaluation; by ignoring Plaintiff's complaints of discrimination, disparate treatment, and a hostile work environment; by terminating Plaintiff's employment without just cause.

231.    Throughout his employment, Plaintiff complained to Mr. Elerts and Ms. Kosolariaman about the disparate treatment and hostile work environment he was being subjected to by Mr. Kichibata. Plaintiff complaints about these issues beginning in March 2020 and his complaints continued throughout his employment.

232.    Defendants Elerts and Kosaloaraman failed to intervene and stop the disparate treatment and hostile work environment and/or participated in the hostile work environment based on Plaintiff's race and/or national origin.

233.    Defendants further subjected Plaintiff to disparate treatment when Defendants retaliated against Plaintiff when, on or about November 12, 2020, Defendants issued Plaintiff an unwarranted written reprimand for bad conduct and poor performance evaluation, and on December 3, 2020, Defendant Fund terminated Plaintiff's employment under the pretext of job performance/deficiencies.

234.    Plaintiff's termination was in close proximity to the filing of his complaints of discrimination, disparate treatment, and a hostile work environment, which  began at the onset of his employment in December 2019, and continued until just prior to his termination.

235.    Defendants subjected Plaintiff to retaliation in violation of the Civil Rights Act of 1991, and thus may recover under §1983,  by:

40

a. Creating and maintaining a work environment that adversely affected the terms, conditions, and privileges of Plaintiff's employment;

b. Creating a hostile and harassing work environment that was so severe and pervasive that Plaintiff was unable to effectively perform the essential functions of his job;

c. Creating a maintaining a hostile work environment by unlawfully terminating Plaintiff's employment on December 3, 2020, effective December 15, 2020 under the pretext of job performance/deficiencies;

d. Failing and/or refusing to take appropriate actions to remedy the effects of the discriminatory treatment by Mr. Kichibata and Ms. Kosolariaman; and

e. Failing and/or refusing to substantive address Plaintiff's complaints of discrimination, disparate treatment, hostile work environment.

236.   Plaintiff had a good faith and reasonable basis to complain about the race and national origin discrimination, disparate treatment, and hostile work environment, constituting protected activity under 42 U.S.C. § 1983.

237.   Moreover, the hostile work environment was caused by or was a custom of Defendant Fund.

238.   At all times relevant, Defendants, and their agents were acting under the color of the laws, customs and usages of the State of California within the meaning of 42 U.S.C. § 1983.

239.   The behavior by the above-listed Defendants occurred when the Defendants were acting within the scope of their employment and used incidents and tools of their employments.

240.   Defendants' disparate treatment and discriminatory and retaliatory practices have caused Plaintiff severe emotional distress and ultimately led to his termination.

41

241.    Accordingly, Defendants have violated Plaintiff's right to equal protection under the Fourteenth Amendment to the United States Constitution.

WHEREFORE, judgment should be entered against the Defendants for compensatory damages and punitive damages under §1983 and any and all additional relief authorized under the law, including but not limited to back pay, front pay, unpaid compensation, additional equal amounts as liquidated damages, compensatory damages, punitive damages, reasonable attorneys' fees, all costs associated with the litigation, pre-judgment and post-judgment interest, and any other relief the Court or a jury deems appropriate.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully requests that a judgment be entered granting Plaintiff the following relief:

 a. Enter judgment against Defendants on all counts;

 b. Defendants be ordered to remove the unlawful termination from Plaintiff's state employment record, and sanitize Plaintiff's employment record of any negative performance;

 c. Defendants be ordered to mark Plaintiff eligible for rehire with the state of California in his personnel records;

 d. Defendants be ordered to add three (3) years of successful employment history to Plaintiff's employment records.

 e. Defendants be ordered to provide neutral references for all of Plaintiff's subsequent employment inquiries.

f.  Award of economic/actual damages according to proof (front pay and back pay with interest and other job benefits, including the value of health benefits, sufficient to redress all of the economic harms Plaintiff has suffered;

g.  Award of compensatory damages in an amount to be proven at trial sufficient to redress the harms Plaintiff has suffered, including physical and emotional distress, humiliation, embarrassment, loss of income, loss of benefits, and mental anguish;

h.  Award of punitive damages in an amount to be proven at trial that would punish Defendants for their knowing, willful, malicious, and reckless disregard of clearly established federal constitutional and statutory rights as alleged herein;

i.  Award of attorneys' fees and costs under 42 U.S.C. § 1988 and all taxable costs of this action;

j.  An award of pre-judgment and post-judgment interest; and

k.  Award such other and further relief as this Honorable Court deems just, proper and appropriate under the facts and circumstances as proved at trial

## JURY DEMAND

Plaintiff demands a trial by jury on all issues triable to a jury as a matter of right.

DATED: September 18, 2024

SEPT 19, 2024

Respectfully submitted,

Orlando L. Johnson
4682 Chabot Drive, #10151
Pleasanton, CA   94588
Tele: (480) 619-7370
Email: automatedvoices@gmail.com

43

# EXHIBIT "A"

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION<br><br>This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | Charge Presented To:<br><br>☐ FEPA<br>☒ EEOC | Agency(ies) Charge No(s):<br><br>**555-2021-00963** |
|---|---|---|

<u>**CALIFORNIA DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**</u>      and EEOC

*State or local Agency, if any*

| Name *(indicate Mr., Ms., Mrs.)*<br>**MR. ORLANDO L JOHNSON** | Home Phone<br>**(480) 619-7370** | Year of Birth |
|---|---|---|

| Street Address<br>**4682 CHABOT DR, 10151, PLEASANTON,CA 94588** | City, State and ZIP Code |
|---|---|

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (*If more than two, list under PARTICULARS below.*)

| Name<br>**CA STATE COMPENSATION INSURANCE FUND** | No. Employees, Members<br>**101 - 200** | Phone No.<br>**(925) 895-6932** |
|---|---|---|

| Street Address<br>**5880 OWENS DRIVE, PLEASANTON, CA 94588** | City, State and ZIP Code |
|---|---|

| Name | No. Employees, Members | Phone No. |
|---|---|---|

| Street Address | City, State and ZIP Code |
|---|---|

| DISCRIMINATION BASED ON *(Check appropriate box(es).)* | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|
| ☒ RACE  ☐ COLOR  ☐ SEX  ☐ RELIGION  ☒ NATIONAL ORIGIN<br>☒ RETALIATION  ☐ AGE  ☐ DISABILITY  ☐ GENETIC INFORMATION<br>☐ OTHER *(Specify)* | Earliest       Latest<br>**12-10-2019    12-03-2020**<br><br>☐ CONTINUING ACTION |

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s))*:

**I was employed by the Respondent from on or about December 10, 2019 until on or about December 15, 2020. My job title during the relevant period was Telecom Engineer I. My hiring manager was Michael Elerts (Caucasian, American National Origin), Director. My immediate supervisor during the relevant period was Priya Kosaloaraman (Asian, Indian National Origin), Telecom Manager.**

**Following my hire in 2019, I was assigned to shadow with and to be trained by a non-management, Senior Engineer. This individual was of Indian national origin. My understanding is that this individual would be responsible for teaching me how to perform the essential functions of my role successfully, including providing me with administrative privileges critical to navigating the Respondent's infrastructure. Instead of onboarding me, this individual ignored me and ostracized me. In response, I was left to learn the role independently. Because this individual was not supporting me, I complained about exclusion to Michael Elerts. Mr. Elerts took no meaningful action, and my ostracization from the team**

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct.<br><br><br>**Digitally signed by Orlando L Johnson on 06-15-2021 02:53 PM EDT** | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT<br><br>SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>(*month, day, year*) |

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION<br><br>This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other Information before completing this form. | Charge Presented To:<br><br>☐ FEPA<br><br>☒ EEOC | Agency(ies) Charge No(s):<br><br>**555-2021-00963** |
|---|---|---|

| **CALIFORNIA DEPARTMENT OF FAIR EMPLOYMENT & HOUSING** and EEOC |
|---|
| *State or local Agency, if any* |

continued. Around this time, I received my ninety day evaluation and the feedback that I received was positive, notwithstanding the fact that I had basically trained myself. Shortly thereafter, in or around March 2020, Ms. Kosaloaraman began in her role, and I advanced my concerns about being excluded directly to her. She responded that she would look into my complaints, but again, no meaningful action was taken to remedy my situation.

On or around March 17, 2020, my team was ordered to work remotely because of the COVID-19 Pandemic. As a result all meetings were reduced to telecommunications mediums such as Zoom. Between March 2020 and the date of my layoff, I was regularly excluded from meeting invitations and/or left out of communications specific to my role, including critical conversations about projects and workflow processes. Accordingly, in or around August 2020, I submitted a complaint about the effects of being excluded to the Respondent's bulletin board. This bulletin board had been set up to field and accept complaints, anonymously or otherwise, about subject-matter related to the Black Lives Matter movement, and was meant to be a way for staff to be able to express themselves. Though I complained anonymously, human resources reached out to me some time later about the nature of my complaint. I therefore have a good faith belief that my management team was made aware of my complaint.

On or around September 15, 2020, I received an evaluation. This evaluation was inherently negative and suggested that I was failing in my role, and that I was rude and not a team player. Prior to this meeting, I had again e-mailed both Mr. Elerts and Ms. Kosaloaraman to complain about being ostracized. Thus when they accused me of not being a team player, I asked them about what they had done to look into my complaints, and their responses were not substantive.

On or about December 3, 2020, I was notified that I was being let go with a final employment date of December 15, 2020. Respondent's reason for my termination was that I had performance deficiencies. I believe that this is pretext. Moreover, I believe that Respondent's actions and inactions are retaliatory for my complaining about discrimination.

I believe that I have been discriminated against on the basis of my race (African American/Black) and that national origin (American), in violation of Title VII of the Civil Rights Act of 1964, as amended. I further believe that I have been retaliated against for my participation in opposition behavior, in violation of the statute.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| **Digitally signed by Orlando L Johnson on 06-15-2021 02:53 PM EDT** | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>(*month, day, year*) |

# EXHIBIT "B"

U.S. Department of Justice
Civil Rights Division

<u>NOTICE OF RIGHT TO SUE WITHIN 90 DAYS</u>

VIA EMAIL

*150 M Street, N.E.*
*Karen Ferguson , EMP, 4CON, Room 9.514*
*Washington, DC 20530*

October 24, 2023

Mr. Orlando L. Johnson
4682 Chabot Dr., #10151
Pleasanton, CA  94588

Re:  EEOC Charge Against California State Compensation Insurance Fund, et al.
No. 555202100963

Dear Mr. Johnson:

   Because you filed the above charge with the Equal Employment Opportunity Commission, and more than 180 days have elapsed since the date the Commission assumed jurisdiction over the charge, and no suit based thereon has been filed by this Department, and because you have specifically requested this Notice, you are hereby notified that you have the right to institute a civil action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e, et seq., against the above-named respondent.

   If you choose to commence a civil action, such suit must be filed in the appropriate Court within 90 days of your receipt of this Notice.  If you cannot afford or are unable to retain an attorney to represent you, the Court may, at its discretion, assist you in obtaining an attorney.  If you plan to ask the Court to help you find an attorney, you must make this request of the Court in the form and manner it requires.  Your request to the Court should be made well before the end of the time period mentioned above.  A request for representation does not relieve you of the obligation to file suit within this 90-day period.

   The investigative file pertaining to your case is located in the EEOC Oakland Local Office, Oakland, CA.

   This Notice should not be taken to mean that the Department of Justice has made a judgment as to whether or not your case is meritorious.

Sincerely,

Kristen Clarke
Assistant Attorney General
Civil Rights Division

by      /s/ Karen L. Ferguson
        Karen L. Ferguson
Supervisory Civil Rights Analyst
Employment Litigation Section

cc: Oakland Local Office, EEOC

California State Compensation Insurance Fund, et al.